UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GREENWOOD,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 17-cv-00483-JSC<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 22 |

Plaintiff John Greenwood seeks social security benefits for a combination of mental and physical impairments, including: major depression, anxiety disorder, Graves Disease, multiple suicide attempts, chronic neck and back pain, poor short and long-term memory, and chronic memory loss. (Administrative Record ("AR") 34, 41, 183.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 17 & 22.) Because the Administrative Law Judge's ("ALJ") decision contains legal error the Court GRANTS Plaintiff's motion and DENIES Defendant's cross-motion.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5 & 10.)

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL HISTORY

On September 16, 2013, Plaintiff applied for Disability Insurance Benefits and Social Security Income payments pursuant to Title XVI of the Social Security Act. (AR 787). The State denied Plaintiff's claim initially and upon reconsideration. (AR 61, 67.) Plaintiff then requested a hearing before an administrative law judge. (AR 78.)

On February 4, 2016, Plaintiff and a vocational expert testified before an ALJ. (AR 801-862.) The ALJ denied Plaintiff's claim on March 28, 2016. (AR 30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (AR 6.) Thereafter, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**A. The ALJ's Findings**

On March 28, 2016, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations taking into consideration the testimony and evidence, and using the SSA's five-step

sequential evaluation process for determining disability. (AR 15-30.); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 15, 2004, the alleged onset date. (AR 18); *see* 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq*.

At step two, the ALJ determined that the objective medical evidence indicated that Plaintiff's affective mood and anxiety disorder constitute "severe impairments" within the meaning of the regulations. (AR 18); *see* 20 C.F.R. §, 416.920(c). However, the ALJ concluded that the medical evidence of record did not indicate that claimant had more than minimal functional restriction due to any physical impairment during the period at issue, and thus concluded that Plaintiff did not have any severe physical impairments. (AR 19.)

At the third step, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At this step, the ALJ considered whether Plaintiff's mental impairments met the listing of Sections 12.04 and 12.06, paragraphs (B) and (C). (AR 19 & 20) With regards to paragraph (B), he concluded that they did not, on the grounds that Plaintiff's mental impairments do not cause (1) at least two "marked" limitations, where a marked limitation means more than moderate but less than extreme, or (2) one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, which means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. (*Id.*) The ALJ also concluded that no paragraph C criteria were present. (AR 20.)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the mental abilities and aptitudes to engage in simple, repetitive tasks that do not require interaction with others due to Plaintiff's psychiatric symptoms and the possible stress that might be caused by such interaction. (AR 21.) To reach this conclusion, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

sufficiently supported." (*Id.*) The ALJ noted "there is almost nothing, or nothing pertinent, by way of evidence prior to the date last insured" and that "a preponderance of the probative opinion evidence and medical evidence does not support a finding of disability. (*Id.*)

As far as the medical opinion evidence, the ALJ gave no weight to the opinion of Plaintiff's treating psychiatric nurse practitioner Denine Baldor-Gallahon because her opinion was brief, conclusory, "neither well supported by medically acceptable clinical findings and is largely inconsistent with other substantial evidence in the record" and there was no evidence that the doctors who signed Plaintiff's forms ever saw or treated him. (AR 26 & 27.) The ALJ gave little weight to the opinion of treating therapist John McGinnis because his opinion was "brief, conclusory, and inadequately supported by clinical findings, even his own." (AR 23.)

The ALJ gave no weight to the consultative opinion of Dr. Frank Chen due to corrective action letters removing Dr. Chen from the DDS panel due to his incompetence and unprofessionalism. (AR 24-25.) Without explanation the ALJ awarded substantial weight to the opinion of consulting psychologist Ute Kollath, Ph.D. (AR 25.) The ALJ awarded great weight to the opinion of a "State agency medical consultant" because the record does not support a finding of severe physical impairment. (*Id.*) The ALJ awarded little weight to "consulting" psychologist Deepa Abraham, Ph.D, and psychological assistant Sherry Loewinger, Ph.D, finding their opinions were "conclusory, inadequately supported by clinical findings, and entirely inconsistent with their findings on evaluation of the claimant." (AR 27.) The ALJ also concluded that the opinions of Abraham and Loewinger were "squarely contracted by treatment notes." (*Id.*) The ALJ gave examining psychologist Dr. Zeiner's opinion substantial weight. (AR 28.)

The ALJ reviewed Plaintiff's former employer William Howard Paul's report that Plaintiff was unable to remember "small or long-term tasks" and that Plaintiff distanced himself from unpleasant realities. (*Id.*) The ALJ found Mr. Paul's report sincere but that it did not support a finding of disability because the record does no support a finding of significant memory impairment. (*Id.*)

At step four, the ALJ found that Plaintiff was incapable of performing his past relevant work as secretary, receptionist, and telemarketer. (AR 29). However, the ALJ also found that

Plaintiff's English communication skills, age, education, work experience, and RFC make Plaintiff capable of making a successful adjustment to other work and thus not entitled to disability benefits. (AR 29 & 30.)

### B. Appeals Council

Plaintiff filed a request for review on April 20, 2016. (AR 11.) On December 27, 2016, the Appeals Council considered Plaintiff's request and denied review, making the ALJ's decision final. (AR 6.)

### C. This Action

Plaintiff commenced this action for judicial review on January 30, 2017 pursuant to 42 U.S.C. §§ 405(g), 1383(c). (Dkt. No. 1.) Both parties thereafter consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 10.) Plaintiff then filed his motion for summary judgment and the Commissioner filed her cross-motion. (Dkt. Nos. 17 & 22.)

## LEGAL STANDARD

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). "A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). And "even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for

1 specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at
2 830–31.

3     "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts
4 and conflicting medical evidence, stating his interpretation thereof, and making findings." *Cotton*
5 *v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). "The opinion of a nonexamining physician cannot
6 by itself constitute substantial evidence that justifies the rejection of the opinion of either an
7 examining physician or a treating physician." *Lester*, 81 F.3d at 831 (internal citation omitted).
8 Ultimately, "the ALJ must do more than offer his conclusions. He must set forth his own
9 interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849
10 F.2d 418, 421–22 (9th Cir. 1988).

11     "When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate
12 reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when
13 he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,
14 asserting without explanation that another medical opinion is more persuasive, or criticizing it
15 with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v.*
16 *Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (internal citation omitted). In conducting its
17 review, the ALJ "must consider the entire record as a whole and may not affirm simply by
18 isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 388 F.3d 1144, 1159 (9th
19 Cir. 2012) (internal citations omitted). "An ALJ may not cherry-pick and rely on portions of the
20 medical record which bolster his findings." *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195,
21 1207–08 (9th Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore
22 others "that indicate continued, severe impairment"). "Particularly in a case where the medical
23 opinions of the physicians differ so markedly from the ALJ's[,]" "it is incumbent on the ALJ to
24 provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings."
25 *Embrey*, 849 F.2d at 422.

26                                     **DISCUSSION**

27     The parties' briefing focuses on Plaintiff's mental impairments. Plaintiff challenges four
28 aspects of the ALJ's decision: (1) not giving sufficient weight to the opinion of treating and

examining psychologists, (2) the evaluation of lay evidence from Plaintiff's former employer and a social security claims representative, (3) the evaluation of Plaintiff's credibility, and (4) the determination of Plaintiff's RFC.

**A.     The ALJ's Consideration of Medical Opinion Evidence**

   **1.     Treating Nurse Practitioner Denine Baldor-Gollahon and On-site Doctor Vic Jose**

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of treating nurse practitioner Denine Baldor-Gollahon and on-site physician Dr. Vic Jose. In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine,* 574 F.3d at 692. "However, only licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing 20 C.F.R. § 404.1513(a)). "Physician's assistants are defined as 'other sources,' § 404.1513(d), and are not entitled to the same deference." *Id*. (citing § 404.1527; SSR 06–03p). However, more recently the Ninth Circuit concluded the Social Security regulations provide "an outdated view" that a nurse practitioner is an "other source" particularly when the nurse practitioner is the primary medical provider. *Popa v. Berryhill*, 872 F.3d 901, 906 (2017) (referencing *Molina*, 674 F.3d at 1111). The ALJ may only discount testimony from a nurse practitioner if the ALJ provides "germane reasons." *Id. at 907*. An ALJ errs when he does not recognize a nurse practitioner as a qualified "other source" that can provide evidence of the plaintiff's impairments and how they affect the plaintiff's availability to work. *See Garrison*, 759 F.3d at 1013-1014 (concluding the ALJ erred by assigning little weight to the nurse practitioner's opinion when the nurse provided two years of summary reports showing that the plaintiff suffered a variety of moderate to severe mental health impairments.)

The ALJ committed legal error when he failed to provide germane reasons to discount the opinions of treating nurse practitioner Denine Baldor-Gollahon. The ALJ afforded no weight to Nurse Gollahon's opinion because he found it brief, conclusory, inadequately supported by the clinical findings, and inconsistent with the record. (AR 26.) However, Nurse Gollahon treated

7

Plaintiff several times in 2014 and 2015, concluding that Plaintiff is severely depressed, has anxiety, and is suicidal. (AR 462 (May 2014), 464 (Aug 2014), 471 (Aug 2014), 473 (July 2014), 482 (May 2014), 485 (June 2014), 491 (March 2015), 501 (Aug 2015), 506 (July 2015), 510 (May 2015), 523 (Dec 2014), 527 (Oct 2014), 531 (Sept 2014), 626 (Jan 2015). Here, similar to *Popa*, Nurse Gollahon treated Plaintiff on a regular basis for over two years. (AR 786.) Nurse Gollahon began seeing Plaintiff in May 2014 and treated him through the administrative hearing, most recently submitting an evaluation dated January 22, 2016. (*Id*.) The ALJ's decision to completely disregard Nurse Gollhon's opinion makes little sense in light of the prominent role she played in Plaintiff's recent medical treatment. *See Popa*, 876 F.3d at 907.

Further, Nurse Gollahon's patient notes are neither brief nor conclusory and her diagnosis that Plaintiff has mood disorders is consistent with the record and clinical findings. During several visits Nurse Gollahon described Plaintiff as disorganized, manic, very emotional, crying, and feeling like "blowing up." As the ALJ admits in his decision, several mental health professionals agree that Plaintiff suffers from mood disorders such as anxiety and depression, including treating therapist John McGinnis, consulting psychologist Dr. Rosemarie Ratto, psychiatrists Dr. Melissa Vallas and Dr. Janetta Gerlingson, treating physician internist Dr. Shruti P. Patel, and psychologist Dr. Deepa Abraham. (AR 23-27.)

The ALJ states that it appears Nurse Gollahon is the only professional who has ever diagnosed Plaintiff with bipolar disorder. However, Nurse Gollahon did not only diagnose Plaintiff with bipolar disorder but also with mood disorder consistent with the findings of other mental health professionals. (*See* AR 512.) In the same paragraph, the ALJ states that psychology student Janel Wheeler reported Plaintiff did not exhibit significant symptoms of depression and anxiety, (AR 27); however Ms. Wheeler is not a medically acceptable treating source or "other source" and therefore her opinion has no bearing on the weighing of evidence. Defendant emphasizes that Ms. Wheeler is supervised by Dr. Harriet Zeiner. Even if this is true, Dr. Zeiner concluded that Plaintiff has "major depressive disorder" with "anxious distress" consistent with Nurse Gollahon's diagnosis. (AR 746.) Further, that Plaintiff's symptoms vary in severity over time is not a sufficient reason to award zero weight to Nurse Gollahon's opinion. *See Garrison*,

759F.3d at 1017 (concluding "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.")

Defendant also argues Nurse Gollahon could have issued a narrative opinion rather than submitting a form evaluation. (*See* AR 785 & 786.) However, reviewing the record as a whole, Nurse Gollahon's notes from Plaintiff's visits support the findings she makes in her form evaluation. *See Robins v. Social Sec. Admin.*, 466 F.3d 880, 992 (9th Cir. 2006) (a reviewing court must examine the record as a whole, it may not affirm an ALJ opinion by isolating specific supporting evidence).

Finally, Defendant's argument that the ALJ properly questioned Dr. Jose's endorsement because there is no evidence he was involved in Nurse Gollahon's diagnosis is unpersuasive. Defendant cites no case that holds a nurse practitioner's opinion is invalid without the endorsement of a physician. Instead, the Ninth Circuit recently concluded that the opinion of a nurse practitioner must be considered when that nurse is the primary medical provider. *Popa*, 872 F.3d at 906.

Accordingly, the ALJ erred by not providing germane reasons for affording zero weight to treating Nurse Gollahon's opinion.

### 2. Examining Psychologist Deepa Abraham

Plaintiff also argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of examining psychologist Dr. Deepa Abraham.

The ALJ accorded "little weight" to Dr. Abraham's opinion as to Plaintiff's impaired mental abilities because Dr. Abraham's opinion is conclusory, inadequately supported by clinical findings, and is contracted by treatment notes.

Plaintiff was referred to Dr. Abraham by his attorney Kyle Kitson for a comprehensive psychological examination. Dr. Abraham examined Plaintiff on January 5, 2016 and submitted a 13-page report. (AR 732-744.) She diagnosed Plaintiff with a mood disorder manifesting as depression, apathy, or elevated mood which causes clinically significant distress or impairment in

9

social and occupational functioning. (AR 740.) Dr. Abraham also opined that Plaintiff's mood disorder symptoms appear to coincide with the onset of Plaintiff's Graves Disease which was diagnosed in 1990. (AR 741.) She noted that one of the symptoms of Graves Disease, an autoimmune disease that affects the thyroid, includes depressed mood if it remains untreated. (*Id.*) Plaintiff informed Dr. Abraham that he does not adhere to a psychiatric regimen or regularly take his prescriptions. (*Id.*)

The ALJ's conclusion that Dr. Abraham's opinion is conclusory is not supported by the record – Dr. Abraham submitted a 13-page report that detailed Plaintiff's complaints, personal history, psychiatric history, family history, and mental status, psychological test results, as well as Dr. Abraham's behavioral observations and diagnostic impression. (AR 732-744.) Nor are Dr. Abraham's opinions unsupported by the clinical findings or Plaintiff's treatment notes. As discussed above, treating Nurse Gollahon and several other medical professionals reached the same conclusion that Plaintiff has a mood disorder that manifests as depression and anxiety.

Defendant argues that Plaintiff is not credible because he admits that he does not regularly take his medication and therefore Dr. Abraham should not have relied upon Plaintiff's statements about his mental impairment; accordingly, the ALJ properly rejected Dr. Abraham's opinion. However, the ALJ does not explain why Plaintiff's occasional failure to take his medications makes him not believable. Further, the case Defendant cites to support its argument, *Hensley v. Colvin*, is unpersuasive as the ALJ there found the doctor's opinions inconsistent with the clinical findings of other professionals. Here, as discussed above, Dr. Abraham's findings are consistent with the opinions of several other medical professionals who also concluded that Plaintiff has a mood disorder.

Accordingly, the ALJ did not provide specific and legitimate reasons for according "little weight" to the opinion of examining psychologist Dr. Abraham. *See Lester*, 81 F.3d at 830-1 (concluding the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.)

//

### 3. Treating Therapist John McGinnis

Plaintiff next argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of treating therapist John McGinnis, MFT.

The ALJ accorded little weight to Mr. McGinnis' findings because they are brief, conclusory, and inadequately supported by the clinical findings.

Plaintiff participated in 13 sessions of psychotherapy with Mr. McGinnis from August to December 2005. (AR 397) Mr. McGinnis concluded Plaintiff suffers from deficits in short-term memory and depression. (*Id.*) Mr. McGinnis also stated that mediation compliance was a major problem from Plaintiff due to his challenges remembering to refill the medication to avoid running out, remembering where he last saw the bottle, etc. (*Id.*) Mr. McGinnis opined that Plaintiff would have difficulty seeking and maintaining employment because although his appearance conveys a high functioning level, remembering appointment times, people's names, and other important information is an "insurmountable obstacle" for Plaintiff. (*Id.*)

The ALJ erred in affording "little weight" to Mr. McGinnis' opinion. Mr. McGinnsis' opinion is supported by the clinical findings of Nurse Gollahon, Dr. Ratto, Dr. Abraham, and Dr. Zeiner. (AR 399, 401, 464, 740, 741, 746.) Nurse Gollahon and Dr. Ratto opined that Plaintiff's memory is impaired, and Dr. Zeiner opined that Plaintiff's memory is variable with a "slowed speed of processing" which might allow him to get a job but that Plaintiff will have "significantly (sic) difficulty in maintaining it." Further Dr. Abraham opined that Plaintiff's memory problems appear to be tied to his depression. (AR 741.) The ALJ erred in finding Mr. McGinnis' opinion conclusory given that Mr. McGinnis' narrative letter was based upon 13 treatment sessions over several months.

Defendant argues Mr. McGinnis' opinion is not relevant to the period at issue because the ALJ concluded Plaintiff's prior applications, filed in 2004 and 2006, were initially denied and not appealed and therefore those decisions are binding. Plaintiff's last visit with Mr. McGinnis was in December 2005 which Defendant contends is outside the relevant period of September 2006 to December 2009, Plaintiff's last insured date. However, the ALJ stated that the onset of Plaintiff's disability was October 2004 but that Plaintiff must establish disability on or before December

11

2009 to be in entitled to disability. (AR 16, 18.) Further, the ALJ apparently found the opinion relevant as he accorded Mr. McGinnis' report "little weight," ultimately deciding that Plaintiff has not "been under a disability...from October 15, 2004 through the date of this decision." (AR 16, 23.) As such, Defendant's argument that Mr. McGinnis' 2005 findings are irrelevant fails.

Accordingly, the ALJ did not provide specific and legitimate reasons for according "little weight" to the opinion of treating therapist John McGinnis .

**B.  Lay Evidence**

Plaintiff next argues the ALJ erred in evaluating lay evidence from Plaintiff's former employer and a social security claims representative. Lay testimony as to symptoms is competent evidence that an ALJ must take into account unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Tobeler v. Colvin*, 749 F.3d 830, 832-834 (9th Cir. 2014). Disregarding competent lay witness testimony without comment, therefore, constitutes legal error. *Id*. Lay witness testimony as to how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment. *Id*.

**1.  Plaintiff's Former Employer**

Plaintiff argues the ALJ's reasoning for rejecting the third party function report from former employer William Howard Paul has no basis in the record and is not germane to the witness.

The ALJ concluded Mr. Paul's report, while sincere, does not support a finding of disability because the record does not support a finding of memory impairment.

Mr. Paul completed a third party function report on November 8, 2013. (AR 231-239.) Mr. Paul stated that Plaintiff was unable to remember small tasks or long term tasks. (AR 231.) Mr. Paul observed that unless Plaintiff takes notes "he has a very hard time remembering what was asked of him." (AR 236.) Mr. Paul fired Plaintiff because he was "disruptive, angry, and couldn't complete his job duties." (AR 237.) Mr. Paul also reported that Plaintiff did not handle changes in his routine very well and became depressed and angry. (AR 237.)

The ALJ erred in not considering Mr. Paul's report. First, the record does in fact support a

finding of memory impairment, as discussed above. Second, it was improper for the ALJ to discredit Mr. Paul's lay testimony as unsupported by the record. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2008) (concluding the ALJ improperly discredited the testimony of a lay witness as not supported by the medical evidence in the record). While *inconsistency* with the record is sufficient to discredit the opinion of a lay witness, *see Bayliss v. Bernhard*, 427 F.3d 1211, 1218 (9th Cir. 2005), Mr. Paul's lay opinion that Plaintiff has memory challenges that get in the way of his work is consistent with the opinions of several treating and examining experts, as discussed above.

Accordingly, the ALJ failed to provide germane reasons for rejecting Mr. Paul's lay opinion.

### 2. Social Security Claims Representative

Plaintiff argues the ALJ should not have disregarded the observations of social security claims representative J. Greenwalt.

The ALJ concluded that while Plaintiff may have had some trouble with the social security interview, the record as a whole fails to demonstrate that the claimant consistently is unable to remain focused and on task. (AR 28.)

Ms. Greenwalt met with Plaintiff on September 18, 2013. (AR 211.) Plaintiff had a 1 pm appointment but did not arrive on time. (AR 210.) Plaintiff arrived much later, around 2:45, and Ms. Greenwalt observed that he may have stepped out due to an "anxiety attack." (*Id*.) When Ms. Greenwalt suggested rescheduling because the office closes at 3 pm Plaintiff became agitated at the thought of having to return. (*Id*.) Ms. Greenwalt observed Plaintiff's thoughts were scattered and focused on the past. (*Id*.) The interview was difficult. (*Id*.) She believed Plaintiff was thoughtful and articulate but had trouble staying on track, particularly in regards to wanting to discuss issues unrelated to his disability and financial applications. (*Id*.)

The ALJ erred in disregarding Ms. Greenwalt's report as inconsistent with the record as a whole because, as discussed above, the record reflects Plaintiff struggles with short term memory and anxiety. Defendant's argument that the ALJ already determined Plaintiff's depression and anxiety was not disabling and therefore the supposed failure to address Ms. Greenwalt's report is

harmless is unpersuasive. As the Court addressed above, the ALJ did not provide specific and legitimate reasons for rejecting the opinion of Plaintiff's treating and examining specialists and therefore Ms. Greenwalt's lay opinion is supportive evidence that the ALJ should have considered.

Accordingly, the Court concludes the ALJ failed to provide specific germane reasons for disregarding Ms. Greenwalt's opinion.

### C. Plaintiff's Credibility

Plaintiff argues the ALJ erred in evaluating Plaintiff's credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v, Astrue*, 504 F.3d 1028, 1035–1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.") This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). The ALJ "must state which pain testimony is not credible and what evidence suggests the claimant[ ][is] not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 ("General findings are insufficient; rather,

14

the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.")

The ALJ concluded Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms and limitations but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not sufficiently supported. (AR 22.) The ALJ gave two reasons for his conclusion. First, that "there is almost nothing, or nothing pertinent, by way of evidence prior to the date last insured." (*Id*.) The ALJ notes that some of Plaintiff's medical records are more than 10 years old and concludes these old records are irrelevant. (*Id*.) The ALJ also states that there is a "substantial gap" in the medical evidence after a state requested consultative examination in 2006. (*Id*.) Second, the ALJ concludes a preponderance of opinion evidence does not support a finding of disability. (*Id*.) The ALJ also observed that Plaintiff forgets to take his medications regularly. (*Id*.)

As a preliminary matter, there is no evidence of Plaintiff's malingering in the medical record nor does the ALJ make this assertion. Therefore the ALJ must offer clear and convincing reasons for discounting the severity of Plaintiff's symptoms. The ALJ failed to meet this demanding standard.

First, the ALJ discounts Plaintiff credibility "for lack of evidence prior to the date last insured" but simultaneously dismissed Kaiser treatment records from 2001 to 2004 as being more than ten years old and therefore irrelevant. (AR 22.) The Kaiser records are relevant because they reflect Plaintiff's depression and anxiety in accordance with Plaintiff's more recent records from 2014 and 2015 which also contain evidence of Plaintiff's mental health challenges. (AR 277, 315, 317, 326.)

While the ALJ does not address Plaintiff's care from other providers, Plaintiff also underwent psychotherapy with Mr. McGinnis in 2005, as discussed above, and treatment at the Martinez Health Center from January 2005 to May 2013. (AR 336-392, 397.) For example, in June 2006, Plaintiff saw Dr. Zenaida Mendoza who diagnosed Plaintiff with depression and proscribed Plaintiff three medications: Trazodone, Prozac, and Levoxyl. (AR 383.) These records are also relevant, supportive evidence of Plaintiff's mental health challenges.

15

Defendant cites *Burch v. Barnhart* and other similar cases to argue Plaintiff must submit medical evidence of his disability prior to December 2009, the date Plaintiff was last insured. 400 F.3d 676, 679 (9th Cir. 2005) (concluding "because Burch was only insured for disability benefits through September 30, 1999, she must establish a disability on or prior to that date.") Defendant then argues the relevant time period for Plaintiff's 2013 application is December 2009, the date last insured, and therefore the records prior to 2009 are irrelevant.

There are several problems with Defendant's arguments. First, the arguments contradict one another. Second, the ALJ stated in his decision that the alleged onset date is October 2004. (AR 18.) Third, the ALJ concluded Plaintiff must establish disability on or before December 31, 2009 in order to be entitled for benefits. (AR 16.) Fourth, the ALJ did consider certain records prior to 2009 including Mr. McGinnis' 2005 report. (AR 397.) Accordingly, the 2001-2004 Kaiser records and the other pre-2009 records in evidence are relevant; the ALJ therefore erred by rejecting Plaintiff's testimony on the grounds that "there is almost nothing, or nothing pertinent, by way of evidence prior to the date last insured."

Second, the ALJ's assertion that the preponderance of the medical evidence does not support a finding of disability pertains to the weighing of medical evidence rather than Plaintiff's credibility. Thus this explanation is not a clear and convincing reason why Plaintiff's testimony should be discarded, particularly since the ALJ improperly weighed the opinions of Plaintiff's treating and examining providers by according those opinions zero or very little weight.

Third, the ALJ's conclusion that Plaintiff has not generally received the "the type of treatment medical treatment one would expect for a genuinely disabled individual" is problematic because mental disorders are variable. First, the ALJ's conclusion is vague. It is unclear what the ALJ means by "type of treatment one would expect." The ALJ failed to specify exactly what treatment or evidence was lacking and therefore the ALJ's findings fail to meet the demanding clear and convincing standard. *See also Ghanim*, 763 F.3d at 1163 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") Second, the Ninth Circuit has repeatedly held that "disabled" in the context of mental health does not require a constant status of *severe* depression

16

and anxiety. *See Garrison*, 759 F.3d at 1017 (concluding "[a]s we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.") (citing cases).

Further, the ALJ's finding that Plaintiff had significant gaps in treatment is not a clear and convincing reason for rejecting his testimony given that the record reflects Plaintiff regularly sought professional medical assistance over a fourteen year period from 2001 to 2015 with the exception of only one year, 2008.[2]

Defendant argues the ALJ properly cited Plaintiff's failure to follow prescribed treatment as a basis for finding Plaintiff's symptoms are not supported. Not so. The Ninth Circuit has held that mental impairments caused by going off prescribed medication are not "clear convincing, and specific grounds" for rejecting a plaintiff's testimony. *Garrison*, 759 F.3d at 1017.

As such, the specific reasons the ALJ gave for disbelieving Plaintiff's testimony about the severity of his symptoms are not "clear and convincing."

\*\*\*

Given that the ALJ's consideration of the medical evidence and adverse credibility finding of Plaintiff are not supported by substantial evidence, the Court finds error in Plaintiff's RFC. *See Martinez v. Berryhill*, 2017 WL 5900191, at \*16 (N.D. Cal. Nov. 30, 2017). Because this error goes to the heart of the disability determination, it is not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination," or "if the agency's path may reasonably be discerned"); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

---

[2] Defendant argues that there are no treatment records from 2007 and 2008. Defendant is incorrect. Plaintiff sought treatment in August 2007. (AR 41 – "[8/27/07] some memory issues since 2005....weaned self off prosac"). Plaintiff also received treatment in August and September 2007 at the Martinez Health Center. (AR 380 & 381.)

17

Because the Court concludes that the ALJ's analysis at step four was in error, the Court need not consider Plaintiff's additional arguments regarding the ALJ's formulation of Plaintiff's RFC. As discussed below, the Court concludes that this case must be remanded for further proceedings.

### D. The Scope of Remand

Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, *id.*, and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *see Leon v. Berryhill*, No. 15-15277, 2017 WL 5150294, at *2 (9th Cir. Nov. 7, 2017) ("where […] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." (citing *Treichler*, 775 F.3d at 1105)). Moreover, if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court should remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." *Garrison*, 759 F.3d at 1021; *see also Treichler*, 775 F.3d at 1106 ("[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.")

Here, even if the record was fully developed and the improperly discredited evidence is credited as true, it is not certain that the ALJ would be required to find Plaintiff legally disabled under the third part of the credit-as-true standard. *Leon*, 2017 WL 5150294, at *4. Because the

18

record creates doubts as to whether Plaintiff is in fact disabled, the rare circumstances that result in a direct award of benefits are not present in this case. *See id*. The Court thus declines to reach the credit-as-true rule and must instead remand for further proceedings.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 17) and DENIES Defendant's Cross-Motion for Summary Judgment (Dkt. No. 22). The Court VACATES the ALJ's final decision and REMANDS for reconsideration consistent with this Order.

This Order terminates Docket Nos. 17 and 22.

**IT IS SO ORDERED.**

Dated: February 28, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge